# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| PATRICIA COSTA,<br><br>        Plaintiff,<br><br>   v.<br><br>MOHAWK INDUSTRIES, INC.<br>MOHAWK ESV, INC., MICHAEL<br>BATES, and DOES 1 through 100,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: SACV 16-02215-CJC(KESx)**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO ORANGE COUNTY SUPERIOR COURT** |

## I.  INTRODUCTION

Plaintiff Patricia Costa filed this action in Orange County Superior Court against Mohawk Industries, Inc., Mohawk ESV, Inc., Michael Bates, and Does 1 through 100, for (1) disparate treatment in violation of the Fair Employment and Housing Act

("FEHA"), California Government Code §§ 12940 *et seq.*; (2) hostile work environment harassment in violation of FEHA; (3) failure to prevent discrimination and harassment in violation of FEHA; (4) wrongful termination in violation of public policy; (5) violation of California Labor Code § 132a; and (6) violation of California Business & Professions Code, §§ 17200 *et seq.*  (Dkt. 1-1 Ex. A [Complaint, hereinafter "Compl."].)  Defendants removed the action to this Court on December 16, 2016, on the basis of diversity jurisdiction, arguing that although Plaintiff and Bates are both citizens of California, Bates's citizenship should not be counted because he was fraudulently joined.  (Dkt. 1 [Notice of Removal, hereinafter "NOR"].)  Before the Court is Plaintiff's motion for remand.  (Dkt. 11 [Motion, hereinafter "Mot."].)  For the following reasons, the motion is GRANTED.[1]

## II.  BACKGROUND

The Complaint alleges the following facts.  Plaintiff is a former employee of Mohawk ESV, which is owned by Mohawk Industries (hereinafter collectively referred to as "Mohawk").  (Compl. ¶¶ 1–2.)  In November 2014, at age 58, Plaintiff was working as a customer service representative at Mohawk's Anaheim, California office.  (*Id.* ¶ 13.)  Plaintiff began to experience a "tingling sensation" in her hands and reported the condition to her direct supervisor.  (*Id.*)  On approximately November 13, 2014, Mohawk's human resources Department instructed Plaintiff to go to a clinic operated by Concentra for a medical evaluation.  (*Id.*)

When Plaintiff arrived at Concentra on November 13, a clinician informed her that she must first submit to a urinalysis test for the presence of illicit drugs.  (*Id.* ¶ 14.)

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for February 13, at 1:30 p.m. is hereby vacated and off calendar.

1    When Plaintiff asked for the basis of the drug test requirement, the clinician "stated only

2    that the drug test was required before Plaintiff could be treated." (*Id.*)  Plaintiff "is

3    informed and believes that Mohawk directed Concentra to condition treatment of

4    Plaintiff's workplace injury on a drug test." (*Id.*)  She further contends that in her thirty

5    years of employment at Mohawk, she was never notified that she was required to submit

6    to a urinalysis test under any circumstances. (*Id.* ¶ 15.)  For this reason, she believed that

7    Concentra was in error in requiring such a test, and she found the test to be "invasive of

8    her privacy, unnecessary, not in any way related to her workplace injury, and not required

9    under any law." (*Id.*)  Accordingly, Plaintiff left the clinic without obtaining a medical

10   evaluation or treatment and sought treatment at a different facility, Huntington Beach

11   Urgent Care. (*Id.*)  Plaintiff was diagnosed with carpal tunnel syndrome in both wrists.

12   (*Id.*)

13

14       When Plaintiff returned to work on November 14, 2014, she asked her supervisor

15   why Concentra had required a urinalysis test. (*Id.* ¶ 16.)  Her supervisor responded that

16   she did not know and had never heard of such a requirement. (*Id.*)  On November 18,

17   2014, Plaintiff met with Mohawk's Regional Vice President, Michael Bates, who

18   informed Plaintiff that Mohawk could terminate her employment because Plaintiff

19   refused to submit to a urinalysis drug test at Concentra as a precondition for receiving

20   medical evaluation and treatment. (*Id.* ¶ 17.)  Plaintiff offered to immediately submit to a

21   drug test, but Bates "instructed Plaintiff to wait until after he consulted with a Human

22   Resources representative, who, he stated, would be calling Plaintiff." (*Id.*)  The next day,

23   a human resources representative, Cindy Wood, telephoned Plaintiff and informed her

24   that she was being suspended immediately without pay for her refusal to submit to such a

25   test. (*Id.* ¶ 18.)  On November 22, 2014, Plaintiff received another call from Wood,

26   accompanied by at least two other individuals, who asked her why she did not submit to a

27   urinalysis test at Concentra. (*Id.* ¶ 19.)  Plaintiff responded that she did so because she

28   "understood that neither Mohawk nor any applicable law or regulation required such a

1    precondition." (*Id.*)  Later that same day, she received a telephone call stating that she

2    had been terminated immediately for her refusal to submit to a urinalysis test. (*Id.*)

3    Plaintiff "is informed and believes that as of November 2014, Mohawk had developed a

4    preference for office workers in California that were under the age of 40 and that,

5    consequently, Mohawk desired to terminate Plaintiff's employment." (*Id.* ¶ 20.)

6

7    Plaintiff filed a FEHA administrative complaint before the California Department

8    of Fair Employment and Housing ("DFEH"), alleging, among other things, that Mohawk

9    discriminated against her on the basis of age. (Dkt. 1-1 at 25–28.)  Bates was not listed

10   as a defendant on the face of the complaint, but Plaintiff specifically referenced his

11   offending conduct in the body of the DFEH complaint. (*Id.* ("On or about November 18,

12   2014, I met with Regional Vice President Michael Bates, who stated that I could be

13   terminated because I refused to take a drug test at Concentra.  I then offered to

14   immediately take a drug test.  However, Mr. Bates instructed me to wait until I spoke to a

15   Human Resources representative, who would be calling me.").)  On November 13, 2015,

16   DFEH issued Plaintiff a Right to Sue Notice. (*Id.* at 23.)  Plaintiff then filed this action

17   on November 9, 2016. (Compl.)

18

19   Of her six causes of action, only the "hostile work environment harassment" claim

20   is brought against Bates. (*See generally id.*)  Specifically, Plaintiff alleges that "[i]n

21   November 2014, Defendant Michael Bates, acting as a managing agent for Mohawk,

22   further harassed Plaintiff by falsely stating to Plaintiff, and only to Plaintiff, that her

23   refusal to submit to a urinalysis drug test before being allowed medical treatment of her

24   workplace injury was grounds for termination.  Defendants knew that no such company

25   policy existed, and that no possible nexus between Plaintiff's medical complaint and

26   illicit drug use existed.  Defendants took this action to discriminate against Plaintiff

27   because of her age." (*Id.* ¶ 29(b).)

28

1    Defendants contend that Plaintiff is a citizen of California and Mohawk Industries

2  and Mohawk ESV are both citizens of Delaware (where they are incorporated) and

3  Georgia (their principal place of business).  (NOR at 3–5.)  Defendants also admit that

4  Bates is a resident of California, but contend that his citizenship should not be considered

5  for purposes of removal because Plaintiff fraudulently joined him.  (*Id.* at 5.)  Defendants

6  contend that Bates was specifically named in an effort to evade the Court's jurisdiction

7  and the Complaint fails to state a valid cause of action against him.  (Dkt. 13 [Opposition,

8  hereinafter "Opp."] at 1.)  Plaintiff agrees with Defendants' citizenship analysis, but

9  disputes that Bates was fraudulently joined.  (*See generally* Mot.)

10

11  **III.  DISCUSSION**

12

13    "Joinder is fraudulent if the plaintiff fails to state a cause of action against a

14  resident defendant, and the failure is obvious according to the settled rules of the state."

15  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quotation omitted).

16  Conversely, "if there is any possibility that the state law might impose liability on a

17  resident defendant under the circumstances alleged in the complaint, the federal court

18  cannot find that joinder of the resident defendant was fraudulent, and remand is

19  necessary."  *Id.* at 1044.  The defendant may present additional facts to show that the

20  joinder is fraudulent.  *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

21  However, in determining whether a defendant was fraudulently joined, all disputed

22  questions of fact and all ambiguities in the controlling state law must be resolved in favor

23  of remand to state court.  *Hunter*, 582 F.3d at 104 at 1042.  "'There is a presumption

24  against finding fraudulent joinder, and defendants who assert that plaintiff has

25  fraudulently joined a party carry a heavy burden of persuasion.'"  *Onelum v. Best Buy*

26  *Stores L.P.*, 948 F. Supp. 2d 1048, 1051 (C.D. Cal. 2013) (quoting *Plute v. Roadway*

27  *Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)).

28

Defendants contend that Bates was fraudulently joined for two reasons.  First, they argue that Plaintiff failed to exhaust her administrative remedies as to Bates, since he was not identified as a defendant in Plaintiff's DFEH complaint.  (Opp. at 7–8.)  Second, they contend that the Complaint does not meet the pleading requirements for a FEHA "hostile work environment harassment" claim against Bates.  (*Id.* at 11–12.)  The Court considers each argument in turn.

## A.  Exhaustion of Administrative Remedies

The parties do not dispute that Plaintiff did not identify Bates as a *defendant* in her DFEH complaint.  (*Id.* at 7–8; Mot. at 8.)  However, Plaintiff argues that her failure to do so does not necessarily bar her from recovery against him in the present action because she identified Bates by name and described his offending conduct in the body of her DFEH complaint.  (Mot. at 7–8.)  In support, Plaintiff cites *Hastie v. Home Depot U.S.A., Inc.*, No. SACV16993JLSDFMX, 2016 WL 4414770 (C.D. Cal. Aug. 18, 2016), where the plaintiff filed a DFEH complaint alleging discrimination, but named only Home Depot in the DFEH complaint.  (Mot. at 7 (citing *Hastie*, 2016 WL 4414770 at *2).)  The plaintiff mentioned an individual harasser, Mousseau, for the first time in a second amended DFEH complaint that was untimely.  *Hastie*, 2016 WL 4414770 at *2.  After the plaintiff brought a lawsuit against Home Depot and Mousseau, the defendants removed the case to federal court on the grounds of diversity jurisdiction, alleging that Mousseau was fraudulently joined.  *Id.*  The *Hastie* court rejected this argument, however, because there were at least three equitable exceptions to the administrative exhaustion requirement that could apply: (1) the unnamed party was involved in the actions giving rise to the claims, (2) the Equal Employment Opportunity Commission should have anticipated that the claimant would name Mousseau in the instant lawsuit, and (3) it was plausible that DFEH could have inferred that Mousseau violated Title VII.  *Id.* at *5–6 (citing *Sosa v. Hiraoka*, 920 F.3d 1451, 1458–59 (9th Cir. 1990)).  *Hastie*

concluded that it need not determine whether the plaintiff was in fact able to establish the

applicability of these exceptions—her claims were potentially viable and not per se

barred for the failure to name Mousseau as a defendant in the DFEH complaint.  *Id.* at \*6;

*see also Martin v. Fisher*, 11 Cal. App. 4th 118 (1992) ("We conclude that since

respondent was named in the body of the administrative charge and participated in the

administrative investigation, the trial court erred in dismissing appellant's claims against

him for failure to exhaust administrative remedies."); *Saavedra v. Orange County*

*Transportation etc. Agency*, 11 Cal. App. 4th 824 (1992) ("Winterbottom was the only

individual identified in the administrative complaint.  He was the only person with whom

Saavedra dealt.  His actions were those of CTSA.  He was put on notice and had an

opportunity to pursue a 'voluntary settlement had he so desired.'"); *Cole v. Antelope*

*Valley Union High School Dist.*, 47 Cal. App. 4th 1505 (1996) ("[W]e conclude

plaintiff's lawsuit is viable as against Mr. Rossi because he was named in the body of the

administrative charge as a person who discriminated against plaintiff.  If there had been

an administrative investigation, Mr. Rossi would have been put on notice of the charges,

and would have had an opportunity to participate.").)

    Defendants attempt to distinguish Plaintiff's authority by arguing that "while some

courts have found that administrative remedies may be exhausted against an individual

named only in the body of the charge, in those cases the individuals are either described

in the charge as the perpetrator of the wrongdoing or are otherwise put on notice of the

potential claims against them."  (*Id.* at 8 (citing *Martin*, 11 Cal. App. 4th at 122 and

*Valdez v. City of L.A.*, 231 Cal. App. 3d 1043, 1061 (1991)).)  Assuming that this

limitation is accurate, it does not help Defendants because Bates *was* identified in the

body of the Plaintiff's DFEH complaint, and his offending conduct was explicitly laid out

in a manner that could reasonably be construed to identify him as one of the perpetrators.

(*See* Dkt. 1-1 at 25–28.)  Specifically, Bates was the first Mohawk representative to

inform Plaintiff that her refusal to submit to urinalysis could justify her termination.

(Compl. ¶ 17.)  He also notified her that human resources personnel would further discuss the matter with her.  (*Id.*)  This was not a "passing, neutral reference" as Defendant contends.  (*See* Opp. at 10.)  The act of notifying a defendant that they could be terminated for refusing to submit to an unexpected urinalysis test is hardly "neutral," especially since he refused her offer to take a drug test at that point.  Additionally, Bates was a high ranking official at Mohawk (Regional Vice President) who officially notified her of her potential grounds for sudden and unexpected termination, so Plaintiff's allegations that Bates was involved in the alleged discriminatory policies is certainly plausible.  (*See id.*)  While the DFEH complaint does not allege that Bates was the *sole* perpetrator of the harm alleged, it could be reasonably read to implicate him as *one* of the perpetrators.  Thus, the same equitable exceptions that potentially applied in *Hastie* could apply in the present case—especially that Bates was involved in the actions giving rise to the complaint.  *See Hastie*, 2016 WL 4414770 at *5 (citing *Sosa*, 920 F.3d at 1458–59 (9th Cir. 1990)).  At this stage, the Court must not make a specific finding on this issue— it is enough that Plaintiff's claim is *potentially* not barred by the exhaustion defense.

Bates submitted a declaration attesting that he was hired by Mohawk less than six months prior to Plaintiff's termination.  (Dkt. 1-3 [Declaration of Michael Bates, hereinafter "Bates Decl."] ¶ 2.)  Bates states that while employed at Mohawk, Plaintiff did not directly report to him, but rather, to her supervisor Margaret Ivans, who in turn reported to Bates.  (*Id.* ¶ 3.)  Bates typically worked from home or on the road and visited the Anaheim office one or two days per month on average.  (*Id.*)  He further testified that his few interactions with Plaintiff were "professional, cordial, and friendly."  (*Id.*)  On or before November 18, 2014, a Mohawk human resources manager told Bates that Plaintiff did not submit to drug testing and could be terminated as a result, and he asked Bates to notify her that a human resources manager would discuss this with her, so he did so.  (*Id.* ¶¶ 4–5.)  Bates characterized the ten-minute interaction as "professional and cordial" and stated he was "disappointed at the possibility that Ms. Costa would be terminated, and I

was sympathetic and kind to her in conveying this possibility." (*Id.* ¶ 5.)  He also attests that at the time of the interaction, he did not know Plaintiff's age, and that he is 51 years old.  (*Id.* ¶ 8.)  Bates maintains that he was never put on notice that Plaintiff perceived his involvement to be harassing or discriminatory and that the lawsuit was a complete surprise to him.  (*Id.* ¶ 7.)

While Bates's declaration contains facts that could resolve the exhaustion defense in Defendants' favor, nothing in it demonstrates that Plaintiff could not *possibly* qualify for an equitable exception to the exhaustion requirement.  That Bates's interactions with Plaintiff were scant and cordial, that he was not her *direct* supervisor, and that he was disappointed at the possibility of Plaintiff's termination do not mean that Bates could not have participated in the alleged discrimination.  He could still have been one of the Mohawk personnel in charge of implementing a discriminatory policy, even if he did not know her exact age or was indeed sad to see her go.  Additionally, Bates's subjective surprise at being named a defendant in this case is not dispositive.  If parties are "described in the charge as the perpetrators of the harm, they can certainly anticipate they will be named as parties in any ensuing lawsuit." *Martin*, 11 Cal. App. 4th at 122.  In this case DFEH issued Plaintiff's right-to-sue letter *without* conducting an investigation, so Bates was not deprived of the right to participate in a DFEH investigation by virtue of Plaintiff's failure to name him as a defendant in her DFEH complaint.  (Mot. at 8.)

**B.  Sufficiency of Pleadings**

In the alternative, Defendants argue that Plaintiff cannot establish a cause of action against Bates for a hostile work environment under FEHA, which requires a showing "(1) that she was subjected to verbal or physical conduct because of a protected characteristic, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working

1   environment." (Opp. at 11–12 (citing *Lelaind v. City and Cnty. Of S.F.*, 576 F. Supp. 2d

2   1079, 1101 (N.D. Cal. 2008)).)  Defendants note that the Complaint contains "no

3   allegations of conduct that amount to harassment" and simply describes one cordial

4   conversation that does not reference her age.  (*Id.* at 13–14.)  They further argue that

5   "one, isolated conversation does not establish severe and pervasive conduct."  (*Id.* at 15.)

6

7        Defendants' arguments are insufficient to show fraudulent joinder, however,

8   because they "have not established that Plaintiff could not *amend* her pleadings and

9   ultimately recover against [Bates] for harassment under the FEHA."  *Padilla v. AT & T*

10  *Corp.*, 697 F. Supp. 2d 1156, 1159–60 (C.D. Cal. 2009) (emphasis added).  Even if

11  Defendants are correct concerning the sufficiency of the Complaint, (which Plaintiff

12  disputes, (Dkt. 14 at 4)), Plaintiff could amend her pleadings to allege further

13  involvement by Bates or a harsher interaction between the two of them.  "A defendant is

14  not a fraudulently joined or sham defendant simply because the facts and law may further

15  develop in a way that convinces the plaintiff to drop that defendant. . . . The words fraud

16  and sham imply a degree of chicanery or deceit, and a state court plaintiff engaging in a

17  common strategy of pleading broadly does not engage in a fraud or sham."  *Padilla*, 697

18  F. Supp. 2d at 1159–60.  Accordingly, Defendants have not met their heavy burden of

19  establishing that Bates was fraudulently named as a defendant and that removal to federal

20  court is proper.

21

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1   **IV.  CONCLUSION**

2

3       For the foregoing reasons, Plaintiff's motion to remand to Orange County Superior

4   Court is GRANTED.

5

6

7       DATED:     February 8, 2017

8   _____

9                       CORMAC J. CARNEY

10                  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28